JUDGE CEDARBAUM

07 CV 4427

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

Plaintiff,

v.

BARCLAYS BANK PLC and
STEVEN J. LANDZBERG,

Defendants.

:
:
:
:
:
:
:
:
:
:
:

07 CV ____
ECF CASE

RECEIVED
MAY 30 2007

---

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission ("Commission"), alleges as follows against defendants Barclays Bank PLC ("Barclays") and Steven J. Landzberg ("Landzberg") (collectively the "Defendants"):

## SUMMARY

1.    Defendants Barclays and Landzberg violated the federal securities laws by illegally trading securities on the basis of material nonpublic information obtained through membership on bankruptcy creditors committees.

2.    In 2002 and 2003, the Defendants joined at least six bankruptcy creditors committees. Three of these committees were official unsecured creditors committees appointed by the Office of the United States Trustee under the auspices of the federal bankruptcy courts; others were unofficial, pre-bankruptcy committees comprised of significant bondholders.

3.    Defendants were entrusted with confidential information by both official and unofficial creditors committees. Defendants signed confidentiality agreements and committee bylaws pursuant to which they received material nonpublic information concerning, among other

things, the financial condition and prospects of the issuers, their most recent business plans, detailed management projections, contemplated financing alternatives, proprietary advisor analyses, and the timing and terms of proposed plans of reorganization.

4.     Defendant Landzberg simultaneously served as Barclays' representative on the creditors committees and as Barclays' proprietary trader of distressed securities. Over a period of eighteen months, the Defendants purchased and sold millions of dollars of securities while aware of material nonpublic information received through six creditors committees – all in breach of fiduciary and similar duties of trust or confidence.

5.     Defendants failed to disclose their illicit trading activities to the sources of material nonpublic information (the creditors committees and issuers), or to the U.S. Trustee or federal bankruptcy courts. Defendants also failed to disclose the material nonpublic information to trading counterparties.

6.     The illicit course of conduct occurred under the watch of Barclays' senior management and Compliance Department.

7.     By this conduct, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)], and SEC Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

8.     The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)], and Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1], to enjoin the Defendants from engaging in the transactions, acts, practices, and courses of business alleged herein, for disgorgement of profits made or losses avoided, for prejudgment interest thereon, and for civil money penalties.

9.     The Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Sections 21(d)(3)(A), 21(e), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3)(A), 78u(e), 78u-1, and 78aa].

10.     Venue lies in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Sections 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u-1 and 78aa]. Venue is proper because the transactions, acts, practices, and courses of conduct occurred in the Southern District of New York. Further, the Defendants are found, inhabit, and transact business in the Southern District of New York.

11.     By the conduct alleged in this Complaint, the Defendants, directly or indirectly, singly or in concert, made use of the means or instruments of transportation or communication in interstate commerce, the means or instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange.

### DEFENDANTS

12.     **Barclays Bank PLC** is a multi-national financial services firm which is incorporated in England and conducts substantial business operations in the United States. Barclays Bank PLC maintains corporate offices at 200 Park Ave., New York, New York. Barclays Bank PLC issues note securities registered with the New York Stock Exchange, pursuant to Section 12(b) of the Exchange Act.

13.     **Steven J. Landzberg**, 40, is a U.S. citizen who resides in Waccabuc, New York. From July 2000 to June 2006, Landzberg was a Director and proprietary trader for Barclays Bank PLC at its corporate offices in New York, New York.

3

## FACTS

### Background

14.     From July 2000 through June 2006, Landzberg was the head proprietary trader for Barclays' U.S. Distressed Debt Desk ("the Desk"). Landzberg was responsible for supervising Barclays' analysts and other staff who worked on the Desk.

15.     In 2002 and 2003, the Desk joined at least six creditors committees on Barclays' behalf. Landzberg served on each of the creditors committees in his corporate capacity, and signed confidentiality agreements in Barclays' name.

16.     In connection with at least six creditors committees, Landzberg and Barclays assumed duties of trust or confidence to the creditors committees and/or issuers of securities. Between March 2002 and September 2003, Landzberg repeatedly purchased and sold distressed bond securities for Barclays' account while aware of material nonpublic information received through the six creditors committees.

17.     Barclays and Landzberg misappropriated material nonpublic information obtained by virtue of their positions on the six creditors committees. The Defendants were provided confidential information to facilitate the issuers' reorganization process, but instead used such information to advance their own pecuniary purposes. The Defendants did not disclose any of their trading to the unsecured creditors committees, issuers, or others that provided material nonpublic information.

18.     In connection with three official unsecured creditors committees, Barclays and Landzberg owed fiduciary duties to all of the bondholders. In a few instances, Landzberg used purported "big boy letters" to advise his bond trading counterparties that Barclays may have possessed material nonpublic information. However, in no instance did Defendants disclose the

4

material nonpublic information they received through official creditors committees to their bond trading counterparties.

19.     Barclays' senior management supervised Landzberg and authorized him to invest and trade in securities for Barclays' account. Barclays' senior management knew that Landzberg served on multiple creditors committees and allowed him to trade the issuer's securities while serving on such creditors committees.

20.     Barclays' Compliance Department was notified that the Desk received "Nonpublic Information" and was "Restricted" with respect to the securities of four issuers whose creditors committees Defendants had joined. Barclays' Compliance Department failed to impose informational barriers or otherwise enforce policies or procedures to prevent Landzberg from trading such securities on the basis of material nonpublic information.

### Galey & Lord, Inc.

21.     On February 19, 2002, Galey & Lord, Inc. filed a voluntary petition for Chapter 11 relief in U.S. Bankruptcy Court for the Southern District of New York. On March 1, 2002, the U.S. Trustee appointed Barclays to the Official Unsecured Creditors Committee of Galey & Lord, Inc. ("Galey and Lord").

22.     Landzberg signed the Official Unsecured Committee Bylaws, which included confidentiality provisions and an acknowledgement of fiduciary responsibility. Barclays also submitted its Creditors Committee Acceptance Form to the U.S. Trustee, which stated: "Noteholders wishing to serve as fiduciaries on any statutory committee are advised that they may not trade while they are committee members. By submitting this form, noteholders are agreeing to this prohibition."

5

23.    The Defendants made fifteen illegal trades in Galey & Lord bond securities between March 19, 2002 and April 4, 2003. At the time of these trades, the Defendants had material nonpublic information by virtue of membership on the Official Unsecured Creditors Committee – including but not limited to the company's most recent business plans, detailed management projections, proprietary analyses from committee advisors, and other information concerning the terms and status of the restructuring negotiations.

### Pueblo Xtra International, Inc.
### (a/k/a Nutritional Sourcing Corporation)

24.    On August 13, 2002, Landzberg signed a confidentiality agreement in connection with Barclays' membership on the bondholder committee for Pueblo Xtra International, Inc. ("Pueblo Xtra").

25.    On September 4, 2002, Barclays filed an involuntary Chapter 11 petition against Pueblo Xtra in U.S. Bankruptcy Court for the District of Delaware.

26.    On or about October 10, 2002, the U.S. Trustee appointed Barclays "Co-Chair" of the Official Committee of Unsecured Creditors of Pueblo Xtra. Landzberg executed the Official Committee's Bylaws, which included confidentiality provisions and an acknowledgement of fiduciary responsibility. Landzberg also signed a supplemental confidentiality agreement with Pueblo Xtra on Barclays' behalf.

27.    Between September 10, 2002 and January 16, 2003, the Defendants made thirteen illegal bond trades in Pueblo Xtra. At the time of these trades, the Defendants had material nonpublic information – including but not limited to the company's most recent business plans, management's financial forecasts, contemplated financing alternatives, and other information concerning the terms and status of the restructuring negotiations.

6

### Desa International, Inc.

28.     On February 6, 2002, Landzberg signed a confidentiality agreement with Desa International, Inc. ("Desa") on behalf of Barclays.

29.     On June 8, 2002, Desa Holdings Corporation filed a voluntary petition for Chapter 11 reorganization in U.S. Bankruptcy Court for the District of Delaware. On or about June 21, 2002, the U.S. Trustee appointed Barclays "Chair" of the Official Committee of Unsecured Creditors of Desa.

30.     On or about July 9, 2002, Barclays executed the Official Unsecured Committee Bylaws, which included confidentiality provisions and an acknowledgement of fiduciary responsibility.

31.     Between August 14, 2002 and December 20, 2002, the Defendants made four illegal trades in Desa bond securities. At the time of these trades, the Defendants had material nonpublic information – including but not limited to management's financial projections, proprietary advisor analyses, and other information concerning the Desa sales process and terms and status of the restructuring negotiations.

### Archibald Candy Corporation

32.     In January 2002, the Defendants joined an unofficial, pre-bankruptcy bondholder committee for Archibald Candy Corporation ("Archibald Candy").

33.     On March 20, 2002, Landzberg executed a confidentiality agreement with Archibald Candy on behalf of Barclays.

34.     Between March 22, 2002 and June 11, 2002, the Defendants made seven illegal trades in Archibald Candy bond securities. At the time of these trades, the Defendants had material nonpublic information – including but not limited to Archibald Candy's most recent

7

business plans, management's performance projections, financing proposals, and other information concerning the terms and status of the restructuring negotiations.

### Conseco, Inc.

35.    On August 22, 2002, Landzberg signed a confidentiality agreement with Conseco, Inc. ("Conseco") in connection with Barclays' membership on Conseco's unofficial, pre-bankruptcy bondholder committee.

36.    On September 26, 2002 and October 18, 2002, the Defendants signed confidentiality agreements with Conseco's consultants.

37.    Between September 10, 2002 and December 4, 2002, the Defendants made twenty-two illegal trades in Conseco bond securities.  At the time of these trades, the Defendants had material nonpublic information – including but not limited to Conseco's most recent business plans, management projections, proprietary advisor analyses, and other information concerning the terms and status of the restructuring negotiations.

### Air 2 US/United Airlines

38.    On December 9, 2002, UAL Corp. filed for Chapter 11 bankruptcy protection in U.S. Bankruptcy Court for the Northern District of Illinois.

39.    On January 31, 2003, Barclays signed a confidentiality agreement in connection with its membership on an unofficial Air 2 US committee.

40.    Between January 31, 2003 and September 11, 2003, the Defendants made eighty-two illegal trades in Air 2 US notes and other securities relating to United Airlines.  At the time of these trades, the Defendants had material nonpublic information – including but not limited to various aircraft lease-rate proposals and agreements, recovery sensitivity analyses, and other information concerning the terms and status of aircraft lease-restructuring negotiations.

8

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Insider Trading*

#### The Defendants Violated Section 17(a) of the Securities Act

41.     The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 40, above.

42.     The Defendants, and each of them, directly or indirectly, by use of the means or instruments of transportation or communication in interstate commerce or of the mails, knowingly, recklessly, or negligently, in the offer or sale of securities, and in breach of a fiduciary or other duty of trust or confidence:

    (a)     employed a device, scheme, or artifice to defraud;

    (b)     obtained money or property by means of an untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)     engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon purchasers of securities.

43.     By reason of the foregoing, the Defendants, and each of them, violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### *Insider Trading*

### The Defendants Violated Section 10(b) of the
### Exchange Act, and Rule 10b-5 Thereunder

44.    The Commission realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43, above.

45.    The Defendants, and each of them, directly or indirectly, by the use or means or instrumentalities of interstate commerce, or by use of the mails or the facilities of a national securities exchange, knowingly or recklessly, in connection with the purchase or sale of securities, and in breach of a fiduciary or other duty of trust or confidence:

> (a)    employed a device, scheme, or artifice to defraud;
>
> (b)    made an untrue statement of material fact or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
>
> (c)    engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

46.    By reason of the foregoing, the Defendants, and each of them, violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and SEC Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this Court enter final judgments which:

**I.**

Permanently restrain and enjoin Barclays Bank PLC from further violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**II.**

Permanently restrain and enjoin Steven J. Landzberg from further violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

**III.**

Permanently restrain and enjoin Steven J. Landzberg, directly or indirectly, from: (i) participating in any committee of creditors in connection with any federal bankruptcy proceeding involving an issuer of securities, or (ii) knowingly or recklessly obtaining any nonpublic information from such a committee of creditors, unless otherwise required by law.

**IV.**

Order Barclays Bank PLC to disgorge ill-gotten gains obtained through its illegal insider trading, with prejudgment interest thereon.

**V.**

Order Barclays Bank PLC and Steven J. Landzberg, and each of them, to pay civil money penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

**VI.**

Grant such other and further relief as the Court may deem just and proper.

## VII.

Retain jurisdiction over this action to enforce any Orders or Final Judgments issued by

the Court.

Dated: May 30 2007

Respectfully submitted,

Robert B. Blackburn (RB-1545)

Arthur S. Lowry (AL-9541)
Fredric D. Firestone
Moira T. Roberts
Daniel J. Juceam (DJ-1256)

Local Counsel
U.S. Securities and Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281-1022
(212) 336-1050 (telephone)
(212) 336-1317 (facsimile)
blackburnr@sec.gov

Counsel for Plaintiff
U.S. Securities and Exchange Commission
100 F St., N.E.
Washington, D.C. 20549-4030
(202) 551-4918 (Lowry telephone)
(202) 772-9245 (Lowry facsimile)
lowrya@sec.gov